## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

VILMA AREVALO                              :
495 Madison Dr.                            :
East Windsor, NJ  08520                    :
     and                                    :          CIVIL ACTION
LEYDI LEMOS                                :
148 Randall Ave.                           :          DOCKET NO.:
Trenton, NJ 08520                          :
     and                                    :
MICHELLE YUNGA                             :
160 Dutchneck Rd.,                         :
East Windsor, NJ 08520                     :
Newark, NJ 07104                           :          **JURY TRIAL DEMANDED**
     and                                    :
JOSELYN CONCE                              :
50 Garden View, Apt. 28                    :
East Windsor, NJ 08520                     :
     and                                    :
LIZBETH ITURRIAGA                          :
56 Garden View Terraces, Unit 18           :
East Windsor, New Jersey                   :
                                           :
       Plaintiffs,                      :
    v.                                     :
                                           :
SELDAT DISTRIBUTION, INC                   :
15 Thatcher Rd.                            :
Dayton, NJ 08810                           :
     and                                    :
SELDAT DISTRIBUTION                        :
CORPORATION                                :
15 Thatcher Rd.                            :
Dayton, NJ 08810                           :
     and                                    :
DANIEL DADOUN                              :
c/o Seldat Distribution, Inc.             :
15 Thatcher Rd.                            :
Dayton, NJ 08810                           :
                                           :
      Defendants.                      :
                                           :

## CIVIL ACTION COMPLAINT

Vilma Arevalo, Leydi Lemos, Michelle Yunga, Joselyn Conce, and Lizbeth Iturriaga (*hereinafter* referred to collectively as "Plaintiffs," unless indicated otherwise), by and through their undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      This action has been initiated by Plaintiffs against Seldat Distribution, Inc., Seldat Corporation, and Daniel Dadoun (*hereinafter* referred to collectively as "Defendants" unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201, *et. seq.*), the New Jersey Wage Payment Law(s) ("NJ WPL" - N.J.S.A. §§ 34:11-4.1 – 34:11-33), and the New Jersey Wage and Hour Law(s) (N.J.S.A. §§ 34:11-4.1 – 34:11-33 - N.J.S.A. §§ 34:11-56a - 34:11-56a30 and corresponding regulations, N.J.A.C. §§ 12:56 *et. seq.*), the Conscientious Employee Protection Act ("CEPA"), and New Jersey common law. As a direct consequence of Defendants' unlawful actions (including failure to properly pay wages and overtime), Plaintiffs seek damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights under the FLSA. This Court may also assert supplemental jurisdiction over Plaintiffs' state law claims as they arise out of the same nucleus of operative facts as their federal law claims.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the

standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

<strong><u>PARTIES</u></strong>

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiffs are adult individuals, with addresses as set forth in the caption.

7.      Defendant Seldat Distribution, Inc. ("Defendant Entity 1") is privately-owned company with various locations in New Jersey and California, including the location at which Plaintiffs worked at 15 Thatcher Rd, Dayton New Jersey.

8.      Defendant Seldat Corporation ("Defendant Entity 2") is a privately-owned company with various locations in New Jersey and California, including the location at which Plaintiffs worked at 15 Thatcher Rd, Dayton New Jersey.[1]

9.      Defendant Daniel Dadoun ("Defendant Dadoun") is the CEO and President of Defendant Entities who controlled the terms and conditions of Plaintiffs' employment, including but not limited to hiring, firing, and issuing compensation.

10.     At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

---

[1] Defendant Entity 1 and Defendant Entity 2 are *hereinafter* collectively referred to as "Defendant Entities" unless indicated otherwise.

## FACTUAL BACKGROUND

11.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.    Plaintiff Vilma Arevalo (*hereinafter* referred to as "Plaintiff Arevalo") was employed with Defendants for approximately two years and four months.

13.    Plaintiff Arevalo was employed with Defendants as a Human Resources Manager until on or about October 15, 2015, when she was terminated from her employment.

14.    Plaintiff Michelle Yunga (*hereinafter* referred to as "Plaintiff Yunga") was employed with Defendant for approximately one year.

15.    Plaintiff Yunga was employed with Defendants as a Human Resources Assistant until on or about October 15, 2015, when she was terminated from her employment.

16.    Plaintiff Leydi Lemos (*hereinafter* referred to as "Plaintiff Lemos") was employed with Defendants for approximately nine (9) months.

17.    Plaintiff Lemos was employed with Defendants as a Human Resources Assistant until on or about October 15, 2015, when she was terminated from her employment.

18.    Plaintiff Joselyn Conce (*hereinafter* referred to as "Plaintiff Conce") was employed with Defendants for approximately 1.5 years.

19.    Plaintiff Conce was employed with Defendants as a Human Resources Assistant until on or about October 15, 2015, when she was terminated from her employment.

20.    Plaintiff Lizbeth Iturriaga Espinoza (*hereinafter* referred to as "Plaintiff Iturriaga") was employed with Defendants for approximately one (1) year and nine (9) months.

21.    Plaintiff Iturriaga was employed with Defendants as a Human Resources Assistant until on or about October 12, 2015, when she voluntarily separated from her employment.

22.    Since Plaintiff Arevalo's date of hire until in or about March of 2015, she was paid on an hourly basis. After in or about March of 2015, Plaintiff Arevalo was switched from being paid an hourly rate to being paid a salary. Plaintiff Arevalo was earning approximately $13.00 per hour when she was first hired. After approximately four (4) months of working with Defendants, Plaintiff Arevalo was given a pay raise to approximately $15.00 dollars per hour. Plaintiff Arevalo was given another pay raise in or about 2014 to $18.00 per hour.

23.    Plaintiff Yunga, Lemos, and Conce were always paid on an hourly basis and their hourly rates ranged from $13.00-$14.00 per hour.

24.    During the first approximate 1 year and 9 months of Plaintiff Arevalo's employment with Defendants, Defendants never classified her as an employee who is exempt from overtime and during the first approximate 1 year and 9 months of her employment, Plaintiff Arevalo was entitled to overtime compensation.

25.    Defendants never classified Plaintiffs Yunga, Lemos, and Conce as employees who are exempt from overtime, and Plaintiffs Yunga, Lemos, and Conce were, throughout their entire durations of employment, entitled to overtime compensation.

26.    During their employment with Defendants, Plaintiffs Arevalo, Yunga, Lemos, and Conce worked in excess of 40 hours per week; however, they were not always paid time and one half for every hour worked in excess of 40 hours in one week.

27.    For example, often times, Plaintiffs Arevalo, Yunga, Lemos, and Conce (as well as other employees throughout Defendant Entities' locations) would be required to work

overtime hours on Saturdays; however, instead of paying Plaintiffs (and other employees) time and one half for hours they worked in excess of 40 hours in one week, Defendants would pay them just one (1) dollar extra per hour.

28.    Defendants have committed wage, hour, and overtime violations as to Plaintiffs Arevalo, Yunga, Lemos, Conce because they have intentionally failed to pay such individuals all overtime they are entitled to on a weekly basis.

29.    Plaintiffs Arevalo, Yunga, Lemos, and Conce are owed very substantial sums of monies for not properly being paid wages and for not being paid for all overtime they worked.

30.    Towards the end of their employment with Defendants, Plaintiffs Arevalo, Yunga, Lemos, and Conce complained to Defendant Dadoun that they (as well as other employees outside of Defendants' Human Resources Department) were not properly being paid overtime compensation.[2]

31.    In early October 2015, Plaintiff Arevalo made a complaint to the Department of Labor ("DOL") that employees of Defendant Entities (including Plaintiffs' Yunga, Lemos, and Conce and employees outside of Defendants' Human Resources Department) were not properly being paid overtime compensation and that some employees were not being paid by W-2.

32.    In response to Plaintiff Arevalo's aforesaid complaint to the DOL, the DOL requested that Plaintiff Arevalo produce general payroll information of Defendants' employees so they could investigate Plaintiff Arevalo's complaint.

33.    Plaintiff Arevalo then requested that Plaintiff's Yunga, Lemos, and Conce assist her in providing general payroll information which Plaintiff Arevalo would then produce to the DOL.

---

[2] Defendant Iturriaga also complained to Defendants that employees were not being paid overtime compensation.

34.     Plaintiffs Yunga, Lemos, and Conce gathered and produced general payroll information to Plaintiff Arevalo at her request and she then produced such information to the DOL.[3]

35.     Shortly after making complaints regarding Defendants' illegal pay practices (on behalf of themselves and other employees) and shortly after Plaintiffs Yunga, Lemos, and Conce gathered and produced general payroll information to Plaintiff Arevalo (who then produced such information to the DOL), Plaintiffs Arevalo, Yunga, Lemos, and Conce were terminated from their employment with Defendants.

36.     Shortly before Plaintiff Arevalo was terminated, she also filed a police report that Defendants were opening business in her name without her consent or authority.

37.     After Plaintiff Arevalo, Yunga, Lemos, and Conce were terminated from their employment on or about October 15, 2015, and after Plaintiff Iturriaga voluntarily separated from her employment on or about October 12, 2015, Defendants filed a lawsuit against Plaintiffs alleging numerous defamatory statements, including but not limited to that Plaintiffs stole and/or assisted in stealing money from Defendants.

38.     Upon information and belief, Defendants have also made defamatory statements to potential employers of Plaintiffs as well as to other third parties, including some of the allegations contained in the lawsuit filed against Plaintiffs.

39.     Defendants' actions have been willful and intentional, as management (including the named individual Defendant herein) have perpetuated a payroll scheme to deprive workers of substantial compensation and intentionally have paid them less than time and one half their hourly rate for hours work beyond 40 hours in one week.

---

[3] Plaintiff Iturriaga also assisted in gathering and producing general payroll information to Plaintiff Arevalo at her request, which Plaintiff Arevalo then produced to the DOL.

40.    Further, Defendants' actions regarding their defamatory statements about Plaintiffs have been willful and intentional and were made as an act of retaliation against Plaintiffs for their complaints regarding Defendants' illegal pay practices and other illegal practices and/or their assistance in a DOL investigation.

**First Cause of Action**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Unpaid Overtime Compensation)**
**- Plaintiffs Arevalo, Lemos, Yunga, and Conce v. All Defendants -**

41.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42.    At all times relevant herein, Defendants have and continue to be "employer[s]" within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203 ("FLSA").

43.    At all times relevant herein, Defendants to this Action were responsible for paying wages to Plaintiffs.

44.    At all times relevant herein, Plaintiffs were employed with Defendants as "employee[s]" within the meaning of the FLSA.

45.    The FLSA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiffs, 1.5 times the employee's regular rate of pay for each hour that the employee works over 40 in a workweek.

46.    During the first approximate 1 year and 9 months of Plaintiff Arevalo's employment with Defendants, she was a "non-exempt" employee within the meaning of the FLSA.

47.    At all times during their respective tenure with Defendants, Plaintiffs Yunga, Lemos, and Conce were "non-exempt" employees within the meaning of the FLSA.

48.    Plaintiffs were not properly paid all overtime owed to them, and Defendants committed intentional violations of the FLSA.

49.    Defendant Dadoun is personally liable for such violations because he personally oversaw payroll, committed wage and hour violations, and perpetuated the aforesaid unlawful practices.

**Second Cause of Action**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Retaliation)**
**- Plaintiffs Arevalo, Lemos, Yunga, and Conce v. All Defendants -**

50.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51.    At all times relevant herein, Defendants have and continue to be "employer[s]" within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203 ("FLSA").

52.    Defendants retaliated against Plaintiffs Arevalo, Lemos, Yunga, and Conce and/or terminated said Plaintiffs in substantial part because of their complaints regarding Defendants' illegal pay practices under the FLSA and/or for assisting in a complaint originally made by Plaintiff Arevalo to the DOL.

53.    These actions as aforesaid constitutes unlawful retaliation and a violation of the FLSA.

54.    Defendant Dadoun is personally liable for such violations because he is the owner and high-level manager responsible for controlling the terms of Plaintiffs' employment (including hiring, firing, and issuing discipline) and her personally participated in the retaliatory actions asserted herein.

**Third Cause of Action**
**Violations of the New Jersey Wage & Hour Law(s) and the NJ Wage Payment Law(s)**
**(Unpaid Overtime Compensation and Wages)**
**- Plaintiffs Arevalo, Lemos, Yunga, and Conce v. All Defendants -**

55.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56.     Plaintiffs were not properly paid all wages owed to them, and they were not properly paid for all overtime worked.

57.     These actions as aforesaid constitute violations of the NJ Wage and Hour Law(s) and the NJ Wage Payment Law(s).

**Fourth Cause of Action**
**Violations of the Conscientious Employee Protection Act ("CEPA")[4]**
**(Retaliation - Wrongful Termination)**
**- Plaintiffs Arevalo, Lemos, Yunga, and Conce v. All Defendants -**

58.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.     Defendants are governed by many local, state, and federal regulations.

60.     Plaintiff Arevalo, Lemos, Yunga, and Conce complained of Defendants' illegal pay practices and other illegal activities occurring within Defendant Entities. For example, Plaintiff Arevalo also complained that she believed Defendants were creating businesses in her name without her consent or authority.

61.     Shortly after making complaints of Defendants' illegal activities, including their illegal pay practices, Plaintiffs were terminated.

---

[4] CEPA is remedial legislation. *Barratt v. Cushman & Wakefield, Inc.*, 144 N.J. 120, 127, 675 A.2d 1094 (1996). Its purpose is "to protect employees who report illegal or unethical workplace activities." *Ibid.* It is also intended to "encourage employees to report illegal or unethical workplace activities and to discourage . . . employers from engaging in such conduct." *Abbamont v. Piscataway Township Bd. of Ed.*, 138 N.J. 405, 431, 650 A.2d 958 (1994). It is to be construed liberally to achieve its important social goal. *Id.*

62.    It is believed and therefore averred that Defendants terminated Plaintiffs' employment because of their complaints regarding Defendants' illegal activities.

63.    Defendant Dadoun is individually liable because he is considered Plaintiffs' employer under CEPA, and he made the decision to terminate them in retaliation for the aforesaid protected activities.

**Fifth Cause of Action**
**New Jersey Common Law**
**(Defamation)**
**-All Plaintiffs v. All Defendants-**

64.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65.    After Plaintiffs Arevalo, Yunga, Lemos, and Conce were terminated from their employment on or about October 15, 2015, and after Plaintiff Iturriaga voluntarily separated from her employment on or about October 12, 2015, Defendants filed a lawsuit against Plaintiffs alleging numerous defamatory statements, including but not limited to that Plaintiffs stole and/or assisted in stealing money from Defendants.

66.    Upon information and belief, Defendants have also made defamatory statements to potential employers of Plaintiffs as well as to other third parties, including some of the allegations contained in the lawsuit filed against Plaintiffs, which are false.

67.    The statements contained in Defendants' aforesaid lawsuit and the statements which were made to potential employers and other third parties that were provided and/or relayed by Defendants were defamatory in the sense that (1) they are untrue; (2) Defendants knew such statements to be untrue at the time that they were made; and (3) such statements were made by Defendants with the intent to harm Plaintiffs reputations and to deter potential employers from hiring them.

68.     The statements contained in Defendants' aforesaid lawsuit and the statements made to potential employers and other third parties were made to the public and were made maliciously, negligently, knowingly, and recklessly.

69.     The statements made by Defendant (as discussed *supra*) clearly applied to Plaintiffs.

70.     Any third party would undoubtedly understand that such defamatory statements apply to Plaintiffs.

71.     As a direct and proximate result of Defendants' defamatory statements, Plaintiffs suffered special harm, including but not limited to loss of income and damage to reputation, humiliation, degradation, emotional distress, mental anguish, injury to professional standing, and deprivation of his right to achieve livelihood.

72.     Defendant Dadoun is individually liable because he participate in and/or directly made the defamatory statements discussed herein.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order providing that:

A.     Defendants are to compensate Plaintiffs, reimburse Plaintiffs, and make Plaintiffs whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendants' illegal actions, including but not limited to back pay, wages, benefits, and other damages permitted by law;

B.     Plaintiffs are to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct;

C.     Plaintiffs are to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

     D.     Plaintiffs are to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

     E.     Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

                                 Respectfully submitted,

                                 **KARPF, KARPF & CERUTTI, P.C.**

By:                                 Ari R. Karpf, Esq.
                                 3331 Street Road
                                 Two Greenwood Square
                                 Suite 128
                                 Bensalem, PA 19020
                                 (215) 639-0801

Dated: February 9, 2016